IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUSTIN CUNNINGHAM and XANE OLSON, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>REYNOLDS CONSUMER PRODUCTS, INC.,<br><br>    Defendant. | Case No.: 1:25-cv-3959 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Justin O. Kay (ARDC No. 6286557)
Charles E. Westerhaus (ARDC No. 6347022)
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Tel: (312) 569-1000
Fax: (312) 569-3000
justin.kay@faegredrinker.com
charles.westerhaus@faegredrinker.com

Rachel A. Beck (*pro hac vice forthcoming*)
1500 K Street, NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 842-8800
Fax: (202) 842-8465
rachel.beck@faegredrinker.com

*Attorneys for Reynolds Consumer Products, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

      A.      OSHA Requires that Reynolds Provide Employees Audiograms Administered by Licensed Professionals to Identify and Record Work-Related Hearing Loss. ................................................................................. 2

      B.      Plaintiffs Sue Reynolds Based On Their OSHA-Mandated Audiograms ............... 4

STANDARD OF REVIEW ........................................................................................................ 5

ARGUMENT .............................................................................................................................. 6

      I.      The Court May Consider Plaintiffs' and OSHA's Audiograms. ............................. 6

      II.      Congress Intended that the OSH Act and Its Regulations Have Preemptive Effect and the HCA Preempts Plaintiffs' GIPA Claim Under the Doctrines of Impossibility and Obstacle Preemption. ............................................................. 7

            A.      Impossibility Preemption Applies Because It Is Impossible To Comply With Both GIPA And the HCA. ....................................................... 9

            B.      Obstacle Preemption Applies Because Allowing GIPA To Selectively Displace Factors Considered In Audiometric Testing and Work-Relatedness Determinations Frustrates Congress' Intent of Establishing Uniform Federal Standards That May Only Be Displaced By An Approved State Plan. ....................................................... 11

      III.      The Putative Nationwide Class Fails Because GIPA Does Not Apply Extraterritorially and the Federally Mandated Audiograms Provided to Nonresident Employees Were Administered Out-of-State. .................................. 13

CONCLUSION ......................................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Allen v. Brown Advisory, LLC*,
   41 F.4th 843 (7th Cir. 2022) ................................................................................................. 6

*Arizona v. United States*,
   567 U.S. 387 (2012) .............................................................................................................. 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................. 5

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   216 Ill. 2d 100, 835 N.E.2d 801 (2005) ......................................................................... 6, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................. 6

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ............................................................................................... 6

*Branson v. Caterpillar, Inc.*,
   No. 23 CV 14329, 2024 WL 3823157 (N.D. Ill. Aug. 14, 2024) ..................................... 6, 8

*Crichton v. Golden Rule Ins. Co.*,
   576 F.3d 392 (7th Cir. 2009) ............................................................................................. 13

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000) ............................................................................................................ 11

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
   505 U.S. 88 (1992) ..................................................................................................... passim

*Hamilton v. O'Leary*,
   976 F.2d 341 (7th Cir. 1992) ............................................................................................... 6

*Henson v. CSC Credit Servs.*,
   29 F.3d 280 (7th Cir. 1994) ................................................................................................. 7

*Indiana Bell Tel. Co. Inc. v. Indiana Util. Regul. Comm'n.*,
   359 F.3d 493 (7th Cir. 2004) ............................................................................................. 11

*McCauley v. City of Chi.*,
   671 F.3d 611 (7th Cir. 2011) ............................................................................................... 6

*McKnight v. United Airlines, Inc.*,
   No. 23-cv-16118, 2024 WL 3426807 (N.D. Ill. July 16, 2024) ........................................... 8

*Milwaukee Police Ass'n v. Flynn*,
　863 F.3d 636 (7th Cir. 2017) ................................................................................................ 6

*Mutual Pharmaceutical Co., Inc. v. Bartlett*,
　570 U.S. 472 (2013) ..................................................................................................... 10, 11

*Orgone Cap. III, LLC v. Daubenspeck*,
　912 F.3d 1039 (7th Cir. 2019) ............................................................................................ 6

*PLIVA, Inc. v. Mensing*,
　564 U.S. 604 (2011) ....................................................................................................... 9, 10

*Rao v. Abbott Lab'ys*,
　No. 12 C 8014, 2013 WL 1768697 (N.D. Ill. Apr. 24, 2013) ........................................... 7

*Sloan v. Anker Innovations Ltd.*,
　711 F. Supp. 3d 946 (N.D. Ill. 2024) ............................................................................ 6, 13

*United States v. Wood*,
　925 F.2d 1580 (7th Cir. 1991) ............................................................................................ 7

**Statutes, Rules & Regulations**

29 C.F.R. Subtitle B, Ch. XVII ................................................................................................. 3

29 C.F.R. § 1904.5 ................................................................................................................. 3, 4

29 C.F.R. § 1904.10 ............................................................................................................... 3, 4

29 C.F.R. § 1904.29 .................................................................................................................. 3

29 C.F.R. § 1910.95 ......................................................................................................... *passim*

45 C.F.R. § 160.103 .................................................................................................................. 5

29 CFR § 1635.11(a) ................................................................................................................ 9

410 ILCS 513/1 *et seq.* ........................................................................................................... 13

410 ILCS 513/10 ....................................................................................................................... 5

410 ILCS 513/25(a) .................................................................................................................. 9

410 ILCS 513/25(c)(1) .............................................................................................................. 5

29 U.S.C.A. § 651 ................................................................................................................ 1, 11

29 U.S.C.A. § Chapter 15 ........................................................................................................ 3

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 6

Fed. R. Civ. P. 56 ........................................................................................................... 7

Chapter 16, OSHA ......................................................................................................... 3

**Other Authorities**

OSHA Instr. PER 04-00-004, *Hearing Conservation Program,* § *X(B), Appx. A,*
 (June 23, 2008) available at:
 https://www.osha.gov/sites/default/files/enforcement/directives/PER_04-00-
 004.pdf ............................................................................................................. 2, 3, 7, 10

OSHA Dir. No. 2024-05, *Cancellation of PER 04-00-004 Hearing Conservation
 Program*, available at:
 https://www.osha.gov/sites/default/files/enforcement/directives/2024-05.pdf. ......................... 3

OSHA Dir. No. ADM 04-00-003, *Notice: Update to Chapter 16* (May 1, 2024),
 available at: https://www.osha.gov/enforcement/directives/adm-04-00-
 003#20240501 .................................................................................................................. 3

OSHA, *Field Safety & Health Mgmt. Sys. (SHMS) Manual*, ch. 16, available at:
 https://www.osha.gov/shms/chapter-16 ................................................................................ 3

## INTRODUCTION

This case presents a collision of federal and state law: Plaintiffs claim that Reynolds' adherence to mandatory Occupational Safety and Health Administration ("OSHA") regulations violated the Illinois Genetic Information Privacy Act ("GIPA"). But because OSHA regulations preempt conflicting state law, Plaintiffs' claims here are preempted, and the Court should dismiss Plaintiffs' lawsuit in its entirety and with prejudice.

Congress enacted the Occupational Safety and Health Act ("OSH Act" or "Act") in 1970 to ensure safe and healthful working conditions nationwide. *See* 29 U.S.C.A. § 651. The Act established OSHA and authorized it to develop and enforce uniform federal standards for occupational safety and health. In 1992, the United States Supreme Court explained that Congress intended the Act to have preemptive effect over an Illinois statute, with Justice O'Connor reasoning that "the text of the Act provides the strongest indication that Congress intended the promulgation of a federal safety and health standard to pre-empt all nonapproved state regulation of the same issue." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 104 n.2 (1992). Consequently, while the Act gives States the option to entirely displace federal regulation with an approved plan, absent such plan, state law is preempted if adherence to both federal and state mandates is impossible, or the state law stands as an obstacle to the system of uniform federal standards that Congress intended. *Id.* at 89, 98-100.

The uniform federal standards for occupational hearing health and safety are codified in the Hearing Conservation Amendment ("HCA"), which requires that employers establish audiometric testing programs to identify and record work-related hearing loss. *See* 29 C.F.R. § 1910.95. If hearing loss is detected, the HCA requires additional steps unless a physician determines the hearing loss is not work related. *Id*. OSHA's published audiogram lists questions to "document pertinent medical history," including inquiries into "Family history of hearing loss."

1

OSHA, Instr. PER 04-00-004, *Hearing Conservation Program,* § *X(B), Appx. A* (June 23, 2008) available at: https://www.osha.gov/sites/default/files/enforcement/directives/PER_04-00-004.pdf.

Plaintiffs contend that Reynolds' compliance with the HCA violated GIPA. Specifically, Plaintiffs allege that as "a condition of applying for employment," they underwent an "occupational health examination and provide[d] information concerning . . . family history of hearing loss," which they argue constitutes genetic information. (*See* First Amended Complaint ("FAC") ¶¶ 20, 28.) Plaintiffs further fault Reynolds for not advising them of their alleged right under GIPA not to share such information. (*Id.* ¶ 50.)

The trouble with Plaintiffs' claim is that because the HCA *requires* inquiries into hereditary hearing loss—as evidenced by OSHA's model audiogram—adherence to both the HCA and GIPA is impossible. Moreover, because the HCA requires that licensed professionals conduct audiometric testing and determine work-relatedness, state law cannot selectively displace the standards such professionals apply without creating an obstacle to the uniform federal standards that Congress intended. Plaintiffs' claim is thus preempted, and the First Amended Complaint must be dismissed in its entirety. In addition, because GIPA does not extend extraterritorially, Plaintiffs cannot represent a purported nationwide class, and the Court should dismiss Plaintiffs' claims insofar as they seek to assert claims based on conduct that occurred outside of Illinois (*i.e.*, at other Reynolds' locations).

## BACKGROUND

A.  **OSHA Requires that Reynolds Provide Employees Audiograms Administered by Licensed Professionals to Identify and Record Work-Related Hearing Loss.**

Reynolds produces household products related to cooking, dining, cleanup, and storage, and it maintains manufacturing and distribution facilities across the country. (FAC ¶ 10.) Fabrication and distribution of these products may occur in high-decibel environments. As such,

Reynolds is subject to OSHA's regulations, including the mandates of the HCA. 29 U.S.C.A. § Ch. 15, 29 C.F.R. Subtitle B, Ch. XVII; 29 C.F.R. § 1910.95. Two of those mandates are relevant here.

***First***, the HCA requires that employers "***shall*** establish and maintain an audiometric testing program," including baseline and annual audiograms that "***shall*** be performed by a licensed or certified audiologist, otolaryngologist, or other physician, or by [certified] technician." 29 C.F.R. § 1910.95(g)(1), (3). OSHA published its model audiogram for Section 1910.95 compliance, and it includes a "Medical History" section asking about pertinent medical information, including family history of hearing loss:

```
Medical History:  (check all that apply)

History of hearing loss              [ ]      History of ringing in ears              [ ]
Family history of hearing loss       [ ]      History of recurrent impacted ear wax   [ ]
History of recurrent ear infections  [ ]      History of wearing hearing aid     R [ ]  L
History of head injury               [ ]      Current cold, flu or allergy symptoms   [ ]
```

*See* OSHA Dir. No. PER 04-00-004, *Hearing Conservation Program, Appendix A* (June 23, 2008), attached hereto as Exhibit A.[1]

***Second***, the HCA imposes additional obligations if audiometric testing detects hearing loss. *See* 29 C.F.R. §§ 1904.10, 1904.5, 1904.29, 19.10.95(g). Employers must notify employees

---

[1] Effective May 1 of 2024, OSHA released an updated version of OSHA Dir. No. ADM 04-00-003, OSHA Field SHMS Manual, that incorporated OSHA Instr. PER 04-00-004 into the revised Chapter 16 as a reference. *See* OSHA Dir. No. ADM 04-00-003, *Notice: Update to Chapter 16* (May 1, 2024), available at: https://www.osha.gov/enforcement/directives/adm-04-00-003#20240501; OSHA, *Field Safety & Health Mgmt. Sys. (SHMS) Manual*, ch. 16, available at: https://www.osha.gov/shms/chapter-16. Two weeks later, with OSHA Instr. PER 04-00-004 incorporated as a reference into the revised Chapter 16, OSHA cancelled the separate Instr. PER 04-00-004. *See* OSHA Dir. No. 2024-05, *Cancellation of PER 04-00-004 Hearing Conservation Program*, available at: https://www.osha.gov/sites/default/files/enforcement/directives/2024-05.pdf.

if their audiogram reflects a "standard threshold shift" in either ear.² 29 C.F.R. § 19.10.95(g)(8)-(10). Employers must take further steps, such as referring the employee for further evaluation and providing, requiring, or refitting hearing protectors, "[u]nless a physician determines that the standard threshold shift is *not work related* or aggravated by occupational noise exposure." 29 C.F.R. § 1910.95(g)(8) (emphasis added). If a standard threshold shift is detected "and the employee's total hearing level is 25 decibels (dB) or more above audiometric zero," then the employer must also record the hearing loss on an OSHA 300 Log, unless "a physician or other licensed health care professional determines . . . that the hearing loss is *not work-related* or that occupational noise exposure did not significantly aggravate the hearing loss." 29 C.F.R. § 1904.10(b)(6) (emphasis added). For recording purposes, a work-related injury is one where an event or exposure at work either caused or contributed to the condition, or significantly aggravated a pre-existing condition. 29 C.F.R. § 1904.5(a). As reflected by OSHA's inclusion of the question on its form, a family history of hearing loss is pertinent to determining whether exposure at work caused/contributed to/significantly aggravated a hearing loss. In other words, federal law requires the exact question that Plaintiffs allege is prohibited by GIPA.

      **B.**      **Plaintiffs Sue Reynolds Based On Their OSHA-Mandated Audiograms.**

Plaintiffs applied for employment as powered industrial truck operators, or PIT operators, at Reynolds' Jacksonville, Illinois, facilities in April and May 2023, respectively. (FAC ¶¶ 26-27.) As a condition of employment, each underwent OSHA-mandated "occupational health examination[s]," including baseline audiograms, redacted copies of which are attached as Exhibit

---

²     The regulations define "standard threshold shift" to mean "a change in hearing threshold relative to the baseline audiogram of an average of 10dB or more at 2000, 300, and 4000 Hz in either ear." 29 C.F.R. § 19.10.95(g)(10).

B. (FAC ¶ 28; Ex. B.)[3] The audiograms were performed at the Jacksonville facility by a certified technician. (*See* Ex. B ("TECH CERT #").) The certified technician used an audiogram form that complied with Section 1910.95 and included a "Hearing History" section that mirrors OSHA's model audiogram, including an inquiry into family history of hearing loss:

> **Hearing History**
> Check YES or NO for each of the following questions    YES | NO
> 1. EITHER PARENT OR GRANDPARENT WITH HEARING TROUBLE BEFORE AGE 50?
> 2. RINGING IN EARS AFTER WORK?
> 3. EARACHES, EAR INFECTIONS OR DRAINAGE FROM EARS MORE THAN ONCE PER YEAR?
> 4. BAD COLD OR FLU TODAY?
> 5. FREQUENT ALLERGY, ASTHMA, SINUS ATTACKS?

(Ex. B.)

Plaintiffs contend that by requiring "occupational health examinations" that sought information about "family history of hearing loss," Reynolds violated Section 25(c) of GIPA, which states that an "employer shall not directly or indirectly solicit, request, or require genetic information of a person or a family member of the person as a condition of employment, preemployment application or licensure" (410 ILCS 513/25(c)(1) (cleaned up)) with "genetic information defined to include "[t]he manifestation of a disease or disorder in family members" pursuant to 410 ILCS 513/10 and 45 C.F.R. § 160.103. Plaintiffs further allege they were not advised of their right "not to disclose" such information. (FAC ¶ 31). Plaintiffs filed suit on behalf of themselves, a "Nationwide Class," and an "Illinois Class." (FAC ¶¶ 35-36.)

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads

---

[3] For the reasons set forth in Section I of the Argument (pp. 6-7, *infra*), these forms may be considered as part of Reynolds' Motion to Dismiss.

5

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Id.*). Even though the factual allegations ought not to be detailed, the plaintiff must provide "some specific facts to support the legal claims asserted." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citation and quotation omitted). Without such facts, a claim fails to "raise a right to relief above [a] speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

On a motion to dismiss, "district courts are free to consider 'any facts set forth in the complaint that undermine the plaintiff's claim.'" *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (quoting *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992)). Dismissal based on preemption is appropriate under Rule 12(b)(6) "when a plaintiff has pleaded himself out of court." *Branson v. Caterpillar, Inc.*, No. 23 CV 14329, 2024 WL 3823157, at *5 (N.D. Ill. Aug. 14, 2024) (dismissing Section 25(e) GIPA claim preempted by ERISA). Similarly, if an Illinois statute does not apply extraterritorially, dismissal of a putative nationwide class based on the extraterritoriality doctrine is warranted where plaintiffs fail to allege facts suggesting the "disputed transaction [] occur[red] primarily and substantially in Illinois." *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 959 (N.D. Ill. 2024) (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85, 835 N.E.2d 801 (2005)) (dismissing non-residents' BIPA and ICFA claims).

## ARGUMENT

**I.     The Court May Consider Plaintiffs' and OSHA's Audiograms.**

As a threshold matter, while courts generally cannot consider documents outside of the pleadings when ruling on a Rule 12(b)(6) motion, courts may "take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019) (citing *Milwaukee Police Ass'n v.*

6

*Flynn*, 863 F.3d 636, 640 (7th Cir. 2017)).

Here, the Court may consider the audiograms that Plaintiffs completed because the FAC includes express allegations that Plaintiffs underwent "occupational health examination[s]," *i.e.*, the baseline audiograms, and Plaintiffs' claim rests on the audiogram's question regarding their "family history of hearing loss." (*See* FAC ¶¶ 20, 28; Ex. B.) The audiograms are thus "implicitly referenced" in the FAC as the "mechanism by which" Reynolds allegedly obtained Plaintiffs' family history of hearing loss. *Rao v. Abbott Lab'ys*, No. 12 C 8014, 2013 WL 1768697, at *3-5 (N.D. Ill. Apr. 24, 2013) (holding that a job applicant's "failure to explicitly mention [his pre-employment] Offer Letter [in his complaint] cannot be used to thwart the incorporation-by-reference doctrine" because "[t]he Offer Letter was clearly the mechanism by which [defendant] offered employment to [plaintiff] and the mechanism by which [plaintiff] accepted [defendant]'s offer of employment").

The Court may also consider OSHA's published audiogram without converting this motion to a Rule 56 motion because it is a matter of public record and subject to judicial notice.[4] *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (citing *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)).

II. **Congress Intended that the OSH Act and Its Regulations Have Preemptive Effect and the HCA Preempts Plaintiffs' GIPA Claim Under the Doctrines of Impossibility and Obstacle Preemption.**

"Preemption may be either express or implied, and [it] is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Gade*, 505 U.S. at 98 (internal quotations and citations omitted). Implied conflict

---

[4] Reynolds submits a copy of OSHA's audiogram as an exhibit for convenience. The audiogram is available from OSHA's archive of publications. *See* OSHA Instr. PER 04-00-004, *Hearing Conservation Program, § X(B), Appx. A* (June 23, 2008), available at: https://www.osha.gov/sites/default/files/enforcement/directives/PER_04-00-004.pdf.

7

preemption takes two forms: "where compliance with both federal and state regulations is a physical impossibility [*i.e.*, impossibility preemption], [ ] or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *i.e.*, obstacle preemption. *Id.* (internal citations and quotations omitted).

In *Gade*, the Supreme Court reasoned that Congress intended that the OSH Act and its regulations have preemptive effect, finding that:

> The design of the statute persuades us that Congress intended to subject employers and employees to only one set of regulations, be it federal or state, and that the only way a State may regulate an OSHA-regulated occupational safety and health issue is pursuant to an approved state plan that displaces the federal standards.

*Id.* at 98-99.[5] And although the HCA's preemption of GIPA with respect to audiometric testing appears to be an issue of first impression, courts in this district have repeatedly recognized that federal law may preempt GIPA claims. *See, e.g.*, *Branson*, No. 23 CV 14329, 2024 WL 3823157, at *5 (N.D. Ill. Aug. 14, 2024) (dismissing GIPA claim to the extent it conflicted with ERISA); *McKnight v. United Airlines, Inc.*, No. 23-cv-16118, 2024 WL 3426807, at *5 (N.D. Ill. July 16, 2024) (noting that "contrary federal laws may preempt GIPA" while finding the OSHA and FAA preemption arguments "underdeveloped"). Indeed, GIPA itself contemplates OSHA preemption as it instructs employers to treat genetic information "in such a manner that is consistent with the requirements of federal law, including but not limited to the Genetic Information

---

[5] The majority in *Gade* agreed on preemption but disagreed on whether preemption of the state law at issue was express or implied. *See Gade*, 505 U.S. at 88-89, 98-99, 104. Here, the Court need not resolve the existence or scope of ***express*** preemption because Plaintiffs' claim is barred by ***conflict*** preemption, and "the existence of an express preemption provision does ***not*** bar the ordinary working of conflict preemption principles or impose a special burden that would make it more difficult to establish the preemption of laws falling outside the clause." *Arizona v. United States*, 567 U.S. 387, 406, (2012) (internal quotations omitted; emphasis original).

Nondiscrimination Act of 2008 [("GINA") and] . . . the Occupational Safety and Health Act of 1970."[6] 410 ILCS 513/25(a).

This Court should apply those same preemption principles here for two reasons: (i) compliance with both the HCA and GIPA is impossible because one requires, and the other prohibits, inquiries into hereditary hearing loss; and, (ii) allowing GIPA to iteratively displace standards governing OSHA-mandated audiometric testing programs would obstruct Congress' intended "system of uniform federal standards," which may only be displaced in whole by an approved state plan. *Gade*, 505 U.S. at 89 (1992).

### A. Impossibility Preemption Applies Because It Is Impossible To Comply With Both GIPA And the HCA.

"Where state and federal law directly conflict, state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (internal quotation marks omitted). Here, accepting Plaintiffs' theory as true, it is impossible for Reynolds to comply with the HCA without violating GIPA.

In accordance with OSHA's mandate that employers "**shall** establish and maintain an audiometric testing program," Reynolds contracts with Health Conservation, Inc. ("HCI") and has implemented a testing program that adheres to the HCA regulations. 29 C.F.R. § 1910.95(g)(1) (emphasis added); *see also* Ex. B. Reynolds relies on certified technicians to satisfy the HCA's requirement that "[a]udiometric tests **shall** be performed by a licensed or certified audiologist, otolaryngologist, or other physician, or by a [qualified] technician." 29 C.F.R. § 1910.95(g)(3) (emphasis added); Ex. B. Reynolds further adheres to the HCA's directive that employers "**shall** establish a valid baseline audiogram" and "**shall** obtain a new audiogram" annually to monitor and record work-related hearing loss. 29 C.F.R. § 1910.95(g)(5)-(7) (emphasis added). The baseline

---

[6] GINA similarly acknowledges OSHA's preemptive effect as its regulations expressly state that it "does not . . . limit the statutory or regulatory authority of the Occupational Safety and Health Administration." 29 CFR 1635.11(a).

9

audiograms that Plaintiffs completed mirror OSHA's published audiogram, specifically including a question about familial hearing history:

| OSHA's Audiogram | Plaintiffs' Audiogram |
|---|---|
| Medical History: (check all that apply)<br><br>History of hearing loss [ ]  History of ringing in ears [ ]<br>Family history of hearing loss [ ]  History of recurrent impacted ear wax [ ]<br>History of recurrent ear infections [ ]  History of wearing hearing aid [ ]<br>History of head injury [ ]  Current cold, flu or allergy symptoms [ ] | Hearing History<br>Check YES or NO for each of the following questions   YES / NO<br>1. EITHER PARENT OR GRANDPARENT WITH HEARING TROUBLE BEFORE AGE 50?<br>2. RINGING IN EARS AFTER WORK?<br>3. EARACHES, EAR INFECTIONS OR DRAINAGE FROM EARS MORE THAN ONCE PER YEAR?<br>4. BAD COLD OR FLU TODAY?<br>5. FREQUENT ALLERGY, ASTHMA, SINUS ATTACKS? |

(Exs. A, B.)

If GIPA were not preempted by the HCA, then Illinois employers would find themselves in the impossible situation where the HCA *requires* inquiry into hereditary hearing loss, as shown in OSHA's audiogram, but GIPA *prohibits* such inquiry. 29 C.F.R. § 1910.95(g)(3)-(8); Ex. A. Restricting inquiry into hereditary hearing loss in this manner would violate OSHA's mandate governing work-relatedness determinations. 29 C.F.R. § 1910.95(g)(8). Under the HCA, if a comparison of audiograms reflects a standard threshold shift, employers must take additional steps, "*[u]nless a physician determines that the standard threshold shift is **not work related or aggravated by occupational noise exposure**.*" 29 C.F.R. § 1910.95(g)(8) (emphasis added). As hearing loss can be caused by environmental and hereditary factors, inquiry into family history is necessary to rule out hereditary influences, as evidenced by OSHA's own audiogram used "to document pertinent medical history." U.S. Dep't of Labor, OSHA Dir. No. PER 04-00-004, *Hearing Conservation Program,* § X(b) (June 23, 2008). As GIPA would prohibit that which OSHA mandates, GIPA "must give way." *PLIVA*, 564 U.S. at 617.

The Supreme Court's decision in *Mutual Pharmaceutical Co., Inc. v. Bartlett*, 570 U.S. 472 (2013) is instructive on this point. There, the Court held that a New Hampshire law, which imposed a duty on drug manufacturers to include specific warnings on their labels, was preempted

10

by federal regulations promulgated under the Federal Food, Drug, and Cosmetic Act, which prohibited manufacturers from changing FDA-approved labels. *Id*. As the Court explained, the state law "imposed a duty on [the manufacturer] ***not*** to comply with federal law." *Id.* at 475 (emphasis in original). This made it "impossible for [the manufacturer] to comply with both its state-law duty to strengthen the warnings on [the drug's] label and its federal-law duty not to alter [the drug's] label. Accordingly, the state law is pre-empted." *Id.* at 480.

While the duties and restrictions on Reynolds are reversed here—with Illinois imposing the restriction and the federal government imposing the duty—the same principle applies with equal force. Plaintiffs' interpretation of GIPA would require Reynolds not to do that which OSHA commands. Because it is impossible for Reynolds to comply with both GIPA and the HCA at the same time, GIPA is preempted insofar as it provides a basis for Plaintiffs' claims here. *Mutual Pharm.*, 570 U.S. at 480.

      **B.    Obstacle Preemption Applies Because Allowing GIPA To Selectively Displace Factors Considered In Audiometric Testing and Work-Relatedness Determinations Frustrates Congress' Intent of Establishing Uniform Federal Standards That May Only Be Displaced By An Approved State Plan.**

Obstacle preemption applies "where what the state has done is an obstacle to the execution of Congress's purpose or frustrates that purpose by interfering with the methods Congress selected to achieve a federal goal." *Indiana Bell Tel. Co. Inc. v. Indiana Util. Regul. Comm'n*, 359 F.3d 493, 497 (7th Cir. 2004). Obstacle preemption is "to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

In enacting the OSH Act, Congress' expressly stated purpose was to assure "every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C.A. § 651(b). To achieve this purpose, Congress authorized the DOL to "set

11

mandatory occupational safety and health standards applicable to all businesses affecting interstate commerce [citation omitted], and thereby brought the Federal Government into a field that traditionally had been occupied by the States." *Gade*, 505 U.S. at 96 (1992). Because "Congress sought to promote occupational safety and health while at the same time avoiding duplicative . . . regulation[,]" it "established a system of uniform federal standards, but gave States the option of pre-empting the federal regulations entirely pursuant to an approved state plan that displaces the federal standards." *Id.* at 89, 102-103. Illinois does not have an approved plan that applies to private employers. *Id.*; *see also* 820 ILCS 219/15 (Illinois' OSHA plan "applies to every public employer in this State and its employees.").

With the HCA, OSHA set the federal standards to ensure occupational hearing safety and health by requiring, among other things, that employers rely on licensed healthcare professionals to monitor and record work-related hearing loss. 29 C.F.R. 1910.95(g). GIPA stands as an obstacle to the intended "uniform federal standards" because it would restrict inquiry by such licensed professionals into potential causes of hearing loss, resulting in disparate treatment of Illinois employees. *Id.* at 102-03. This is especially true where the very topic Plaintiffs allege is off limits under GIPA (family history of hearing loss) is identified by OSHA as a federally-required area of inquiry. As the plurality in *Gade* explained in the context of implied preemption:

> To allow a State selectively to "supplement" certain federal regulations with ostensibly nonconflicting standards would be inconsistent with this federal scheme of establishing uniform federal standards, on the one hand, and encouraging States to assume full responsibility for development and enforcement of their own OSH programs, on the other.

*Id.* Consequently, even if this Court were to determine that it is not impossible to comply with both GIPA's prohibitions and the HCA's mandate, Plaintiffs' GIPA claim still fails as to find otherwise would permit states to "selectively" supplement OSHA's regulations, thereby thwarting Congress'

12

intent to establish uniform federal standards. *See id.*

### III. The Putative Nationwide Class Fails Because GIPA Does Not Apply Extraterritorially and the Federally Mandated Audiograms Provided to Nonresident Employees Were Administered Out-of-State.

Under Illinois law, "a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 959 (N.D. Ill. 2024) (citing *Avery*, 216 Ill. 2d 100, 184-85, 835 N.E. 2d 801, 852). Absent such intent, "nonresident plaintiffs may sue under the [statute] only if the circumstances relating to the alleged [statutory violations] occurred mostly in Illinois." *Crichton v. Golden Rule Ins. Co.,* 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery,* 216 Ill. 2d at 184-85, 835 N.E. 2d at 852-53 (2005)). Otherwise, the nonresident plaintiffs lack standing. *Id.*

Here, a Nationwide Class lacks standing because GIPA does not include extraterritorial language, s*ee* 410 ILCS 513/1 *et seq.*, and the audiograms giving rise to Plaintiffs' GIPA claim were administered at the employees' respective facilities. (*See* FAC ¶¶ 26-28; Ex. B: ("TEST SITE: Jacksonville").) As the alleged GIPA violations with respect to all nonresident class members would have occurred at facilities outside of Illinois, the Court should dismiss all claims by the putative Nationwide Class. *Crichton,* 576 F.3d at 396 (7th Cir. 2009).

Plaintiffs cannot avoid this result by asserting conclusory allegations that Reynolds acted from its Illinois headquarters when it "devised[,] implemented . . . over[saw], controlled, and directed that its human resource staff at its locations nationwide execute this policy" of audiometric testing. (FAC ¶¶ 22, 52.) As a threshold issue, implementing an audiometric testing program is not a policy that Reynolds independently developed—it is a federal mandate. 29 C.F. R. § 1910.95. Moreover, Plaintiffs have not alleged (nor can they allege) that nonresident employees traveled to Illinois to undergo their OSHA-mandated audiograms. To the contrary, as reflected in the audiograms, the OSHA-compliant audiometric testing occurred at the employees' worksites. (*See*

13

Ex. B ("TEST SITE: Jacksonville").)

Finally, the Nationwide Class allegations underscore the obstacle preemption analysis above. If the HCA did not preempt GIPA, companies headquartered in Illinois that provided OSHA-mandated audiograms to nonresident employees at out-of-state facilities would be liable for GIPA violations unless they implemented different standards for testing and work-relatedness determinations in different locations, thereby frustrating Congress' intended "system of uniform federal occupational health and safety standards." *Gade,* 505 U.S. at 102 (1992).

## CONCLUSION

For these reasons, the Court should dismiss the First Amended Complaint with prejudice.

Dated: July 15, 2025

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Justin O. Kay*

Justin O. Kay (ARDC No. 6286557)
Charles E. Westerhaus (ARDC No. 6347022)
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Tel:   (312) 569-1000
Fax:   (312) 569-3000
justin.kay@faegredrinker.com
charles.westerhaus@faegredrinker.com

Rachel A. Beck (*pro hac vice forthcoming*)
1500 K Street, NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 842-8800
Fax: (202) 842-8465
rachel.beck@faegredrinker.com

*Attorneys for Reynolds Consumer Products, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that on July 15, 2025, I had the foregoing electronically filed with the Clerk of Court using the CM/ECF system which will provide electronic notification to all parties of record.

                                              */s/ Justin O. Kay*