IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUSTIN CUNNINGHAM and XANE OLSON, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>REYNOLDS CONSUMER PRODUCTS, INC.,<br><br>  Defendant. | Case No.: 1:25-cv-3959 |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Justin O. Kay (ARDC No. 6286557)
Charles E. Westerhaus (ARDC No. 6347022)
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Tel: (312) 569-1000
Fax: (312) 569-3000
justin.kay@faegredrinker.com
charles.westerhaus@faegredrinker.com

Rachel A. Beck (*pro hac vice forthcoming*)
1500 K Street, NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 842-8800
Fax: (202) 842-8465
rachel.beck@faegredrinker.com

*Attorneys for Reynolds Consumer Products, Inc.*

# INTRODUCTION

In its Opening Brief, Reynolds showed why this case cannot proceed as pleaded because, amongst other things, permitting a plaintiff to proceed with a GIPA case under these circumstances would upend federal law and objectives under the OSH Act as explained by the United States Supreme Court in *Gade v. National Solid Wastes Management Association,* 505 U.S. 88 (1992). *Gade* is the seminal case on OSH Act preemption, and it dictates the outcome in this case— dismissal. Plaintiffs' Opposition fails to even cite it, let alone discuss or attempt to distinguish it.

In *Gade*, the Court recognized the OSH Act's ***dual*** purpose: (1) "promote occupational safety and health," and (2) avoid duplicative regulation by "establish[ing] a system of uniform federal occupational health and safety standards" that States may only displace with an approved plan. *Id.* at 102. Justice O'Connor explained that any "nonapproved state regulation of occupational safety and health issues for which a federal standard is in effect is impliedly pre-empted as in conflict with the full purposes and objectives of the OSH Act[.]" *Id.* at 98-99.

The Opposition inadvertently illustrates the conflict that would be created under Plaintiffs' preferred reading. Plaintiffs argue that GIPA does not impair the OSH Act's objectives because "GIPA would promote workplace safety" by "impeding the optional physician inquiry" into work relatedness and "causing the [HCA's] remedial measures to kick in automatically." (Opp. at 13-14.) But the work-relatedness inquiry is ***not*** optional (hence, the impossibility of compliance with both federal and state law) and moreover, this exact type of argument was rejected in *Gade*:

> To allow a State selectively to "supplement" certain federal regulations with ostensibly nonconflicting standards would be inconsistent with [the OSH Act's] federal scheme of establishing uniform federal standards .… ***We cannot accept petitioner's argument that the OSH Act does not pre-empt nonconflicting state laws because those laws, like the Act, are designed to promote worker safety***.

505 U.S. at 103 (emphasis added). Were this Court to disregard *Gade* (as Plaintiffs urge) work-relatedness determinations under the HCA in Illinois will diverge from the uniform federal

1

standards that Congress intended. That means Plaintiffs' claims are preempted.

Instead of addressing *Gade*, Plaintiffs urge the Court to side-step it and defer any analysis of it until summary judgment. But as explained below, OSHA's Hearing Conservation Program, including the model audiogram, is subject to judicial notice, and Plaintiffs pleaded themselves out of court by basing their GIPA claims on an HCA-mandated hearing conservation program. Thus, the Court should dismiss the First Amended Complaint ("FAC") with prejudice.

## ARGUMENT

**I.     It Is Impossible to Comply with Both GIPA and the HCA Because Inquiry Into the Cause of Employee Hearing Loss Is Not Optional.**

It is impossible to comply with both the HCA and GIPA: the HCA requires inquiry into the cause of employee hearing loss, yet GIPA prohibits consideration of hereditary factors that Plaintiffs concede cause "[a]pproximately 60-70% of hearing loss." *See* 29 C.F.R. §§ 1910.95(g), 1904.10(a); FAC ¶ 21. Recognizing that it is impossible to assess causation without considering hereditary factors, Plaintiffs argue (at 10) that the HCA "simply requires 'audiometric testing,'" and that OSHA's regulations permit, but do not require, work-relatedness determinations. Not so.

Under the HCA, work-relatedness determinations are required to assess whether hearing loss must be recorded in accordance with Section 1904.10(a), and whether additional hearing precautions must be imposed under Section 1910.95(g). Specifically, if an "employee has experienced a ***work-related*** Standard Threshold Shift (STS)" the employer "***must record*** the case on the OSHA 300 Log." 29 C.F.R. § 1904.10(a) (emphasis added). Thus, because only a "work-related" STS must be recorded, employers must be able to make a determination of whether a work-related STS occurred. *Id*. at 1904.10(b)(6). If work-relatedness determinations were optional, the HCA would require that every STS be recorded, not just a "work-related" STS.

Similarly, if an STS is detected, an "employer shall ensure" additional hearing precautions

2

are taken, "[u]nless a physician determines that the standard threshold shift is not work related[.]" 29 C.F.R. § 1910.95(g)(8)(ii). Again, the touchstone for compliance is whether the STS is "work-related," and that determination of work-relatedness must be made by a physician. *Id.*

Plaintiffs pitch this physician analysis of whether an STS is work-related or not as "optional" because, in their view, the regulations do not mandate a physician's analysis to determine work-relatedness. Rather, according to Plaintiffs, the regulations merely permit a physician to excuse an employer from taking measures if the STS is not work-related. But to accept Plaintiffs' argument, the Court would be required to read Section 1910.95(g)(8)(ii) in isolation and ignore the other sections making clear that "work-relatedness" (whether determined by a physician or not) is the fundamental compliance question. *See, e.g.*, 29 C.F.R. § 1904.10(b)(6).

As explained above, for an employer to know whether to record an STS, that employer must know whether the STS is work-related. To make that determination, OSHA regulations require employers to consider other possible causes, which include "non-work-related event[s] and exposure[s]" (29 C.F.R. § 1904.5(b)(2)(ii)) like hereditary factors, which Plaintiffs concede cause "[a]pproximately 60-70% of hearing loss." FAC ¶ 21. And while Plaintiffs offer the conclusion (at 13) that "physician inquiry into the cause of hearing loss … can be completed without asking about family histories," they fail to explain ***how*** such inquiry could credibly proceed by ignoring what is (according to their own Complaint) the single largest cause of hearing loss.

While it is not necessary for the Court to consider OSHA's model audiogram[1] to find that compliance with GIPA and the OSH Act is impossible, that model audiogram shows why Reynolds' argument is the better approach. Specifically, the model audiogram shows how OSHA

---

[1] Plaintiffs' attacks (Opp. at 10-11) on Reynolds' shorthand references to OSHA's "Sample of Audiogram History / Report Form" as a "model audiogram" are yet another example of Plaintiffs' attempts to distract the Court from the merits of Reynolds' motion to dismiss.

3

interprets its own regulations: as an employer subject to the same HCA regulations it promulgates, OSHA inquires into "family history of hearing loss" as pertinent medical history:



U.S. Dep't of Labor, OSHA Dir. No. PER 04-00-004, *Hearing Conservation Program, § X(B), Appendix A* (June 23, 2008).

Plaintiffs' reliance on *Short v. MV Transportation, Inc.*, No. 24 CV 3019, 2025 WL 755795, at *4 (N.D. Ill. Mar. 10, 2025), is misplaced. In *Short*, the court analyzed preemption of GIPA by a different law—the Motor Carrier Safety Act ("MCSA")—and its regulations, which set "minimum safety standards" to ensure drivers are "physically qualified to operate a commercial motor vehicle." *Id*. The *Short* court ultimately held that GIPA was not preempted by the MCSA, reasoning that the regulations did not require inquiry into family medical history, and whether medical "best practices" did was irrelevant because the minimum federal standards did not. *Id.* at *5. Plaintiffs argue (at 12) that the "same is true here" because the HCA "requires only audiometric testing." But as explained above, the HCA requires more than just audiometric testing—it requires employers to make work-relatedness determinations in order to comply with the HCA.

In addition, unlike the OSH Act, Congress intended the MCSA regulations like those at issue in *Short* "to supplement, rather than supplant existing state and local safety regulations." *Interstate Towing Ass'n, Inc. v. City of Cincinnati, Ohio*, 6 F.3d 1154, 1162 (6th Cir. 1993). Indeed,

4

the Sixth Circuit in *Interstate Towing* expressly distinguished the preemption analysis to be applied to the MCSA, explaining: "Unlike the OSH Act scheme, [the MCSA] does not preclude the coexistence of federal and state regulation." *Id*. at 1158-1161. Here, unlike the MCSA regulations at issue in *Short*, the HCA and GIPA cannot "coexist" because the HCA requires an inquiry into the cause of hearing loss that must consider hereditary factors, whereas GIPA prohibits such inquiry. The Court therefore should dismiss the FAC with prejudice.

## II. GIPA's Intrusion on Work-Relatedness Inquiries Obstructs the Scheme of Uniform Federal Standards Congress Intended.

Plaintiffs' claims are also preempted because restricting such inquiry via GIPA would subject Illinois employers to different standards than apply to other OSHA-regulated employers, thereby obstructing the uniform federal standards Congress intended. *See Gade*, 505 U.S. at 103.

Obstacle preemption applies "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Gade*, 505 U.S. at 98. Just as they ignore *Gade*, Plaintiffs ignore the full purposes and objectives of Congress explained in *Gade*:

> The [OSH] Act as a whole demonstrates that Congress intended to ***promote occupational safety and health while avoiding subjecting workers and employers to duplicative regulation. Thus, it established a system of uniform federal standards***, but gave States the option of pre-empting the federal regulations entirely pursuant to an approved state plan that displaces the federal standards.

*Id.* at 89 (emphasis added). When addressing Congress's objectives in passing the OSH Act, the Opposition omits the "system of uniform federal standards" that Congress intended to create. Instead, Plaintiffs focus solely on the fact that "GIPA would *advance*, not undermine, the OSH Act's stated objective of promoting safety in workplaces" by "impeding the optional physician inquiry" and "causing the remedial measures to kick in automatically." (Opp. at 13-14.) But "safety" alone is not the OSH Act's purpose—it is *uniform* safety standards.

Plaintiffs' argument treats the HCA as setting minimum federal standards that Illinois can

5

supplement via GIPA, which is precisely the theory the United States Supreme Court rejected in *Gade*. In that case, the Court held that "[t]o allow a State selectively to 'supplement' certain federal regulations with ostensibly nonconflicting standards would be inconsistent with this federal scheme of establishing uniform federal standards." *Gade*, 505 U.S. at 103. The Supreme Court's reasoning makes sense: under Plaintiffs' theory, OSHA standards for physician inquiry into hearing loss would no longer apply in Illinois, thereby disrupting the uniform federal standards that Congress intended. Further, even if work relatedness of hearing loss could be determined without considering hereditary factors that Plaintiffs concede cause "[a]pproximately 60-70% of hearing loss," Illinois employers would be forced to restrict physician inquiry, whereas all other OSHA-regulated employers outside of Illinois would not. Indeed, under Plaintiffs' theory, it appears that OSHA itself (were it not a federal agency) would be liable for violating GIPA.

Plaintiffs' argument that GIPA and the OSH Act serve other, distinct purposes misses the point. While it is true that GIPA and OSHA have differing statutory objectives, and that differing statutory objectives may "cut[] against a finding of obstacle preemption," (at 14) Plaintiffs' reliance on this general rule fails to account for the specific exception to the rule (as recognized in *Gade*) that laws (like GIPA) "regulat[ing] the conduct of workers and nonworkers alike would generally not be preempted" so long as the laws "do not conflict with OSHA standards." 505 U.S. at 107. Here, the exception governs because GIPA *does* conflict with OSHA standards: the HCA requires or, at minimum, permits inquiry into hereditary factors, whereas GIPA prohibits it, and the GIPA prohibition (if not preempted) would create an insurmountable obstacle to Congress's goal of uniformity in safety regulations. *See* 29 C.F.R. §§ 1910.95(g), 1904.10(a).

**III. The Court May Consider OSHA's Hearing Conservation Program.**

As noted above, GIPA is preempted in this case by the OSH Act whether the Court considers on this motion to dismiss OSHA's Hearing Conservation Program (including its model

6

audiogram) or not. But the Court can and should consider OSHA's Hearing Conservation Program without converting this motion to a Rule 56 motion because it is a public record subject to judicial notice, and while Plaintiffs refuse to "concede" authenticity, they do not (and cannot) credibly dispute it. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (citing *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)).

Reynolds is not asking the Court to incorporate by reference into the record extrinsic facts,[2] but rather is asking the Court to take judicial notice of "the indisputable facts that documents in the public domain exist and that they say what they say." *Gubala v. CVS Pharmacy, Inc.,* No. 14 C 9039, 2016 WL 1019794, at *2-6, n.5 (N.D. Ill. Mar. 15, 2016) (citing *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012)). Courts routinely do so.[3]

Here, OSHA's Hearing Conservation Program is available on OSHA's archives, *see* https://www.osha.gov/sites/default/files/enforcement/directives/PER_04-00-004.pdf (last visited Oct. 6, 2025), making its existence and authenticity indisputable.[4] The contents of OSHA's

---

[2] Plaintiffs' invocation of the incorporation-by-reference doctrine (at 5-7) on this issue is a red herring. It is solely Plaintiffs' own audiogram forms (ECF No. 16-2 (Ex. B)) that are incorporated by reference, and Plaintiffs do not dispute they can properly be considered.

[3] *See, e.g., Gubala*, 2016 WL 1019794, at *2-6, n.5, n.10 (collecting cases and taking judicial notice of FDA guidelines and comments submitted to FDA); *Corrie v. Caterpillar, Inc.,* 503 F.3d 974, 978 (9th Cir. 2007) (judicial notice of federal agency guidelines); *McGhee v. City of Flagstaff*, No. CV-20-08081, 2020 WL 2309881, at *2 (D. Ariz. May 8, 2020) (judicial notice of multiple agency publications' existence and contents); *Cali v. E. Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 287 n.6 (E.D.N.Y. 2001) (judicial notice of state and federal agency publications, among other publications).

[4] As set forth in Reynolds' motion (at 3) OSHA canceled its PER 04-00-004 Hearing Conservation Program directive, to which OSHA's sample audiogram report is attached, on May 14, 2024. OSHA Dir. No. 2024-05, *Cancellation of PER 04-00-004 Hearing Conservation Program*, available at: https://www.osha.gov/sites/default/files/enforcement/directives/2024-05.pdf (last visited Oct. 6, 2025). The cancellation notice explains that the directive was superseded by the OSHA Field SHMS Manual, which had already incorporated the directive as a reference. *Id*.; *see also* OSHA, *Field Safety & Health Mgmt. Sys. (SHMS) Manual*, ch. 16, available at: https://www.osha.gov/shms/chapter-16 (last visited Oct. 6, 2025).

7

Hearing Conservation Program, *i.e.*, that OSHA's audiogram form includes inquiry into "Family history of hearing loss," which OSHA deems "pertinent medical history," are likewise beyond dispute. OSHA Instr. PER 04-00-004, *Hearing Conservation Program,* p. ii ("APPENDIX A: Sample of Audiogram History / Report Form"), § I ("This Instruction initiates and establishes a hearing conservation program that complies with 29 CFR 1910.95"), X(B) ("OSHA personnel covered by PER 04-00-003 will complete an audiometric history form in order to document pertinent medical history"). Because its existence, authenticity, and contents cannot be disputed, the Court may consider OSHA's Hearing Conservation Program, including its audiogram.

Plaintiffs urge this Court to ignore the OSHA Hearing Conservation Program based on the decision of the court in *Short* to refuse to consider a publication by the Federal Motor Carrier Safety Administration's National Registry of Certified Medical Examiners offered by the defendant. 2025 WL 755795, at *2. But the purpose for which the document in *Short* was presented is different than the purpose for which OSHA's Hearing Conservation Program is presented. In *Short*, the Court refused to take judicial notice of the document because it was merely a guide for questions one might ask, and "[g]uidance that may or may not have factored into [the plaintiff]'s physical examination implicates factual disputes that cannot be resolved now." *Id.* Here, by contrast, OSHA's Hearing Conservation Program and the model audiogram do not implicate factual disputes about what may or may not have happened, but rather they reflect an agency's interpretation of its own regulations. With regard to obstacle preemption, the model audiogram helps to highlight the legal argument that were the Court to find that GIPA is not preempted in this case, employers in different jurisdictions would be subject to different regulations, thereby defeating Congress's purpose (as explained in *Gade*) of achieving uniformity.

### IV. Dismissal Is Proper Because Plaintiffs Pleaded Themselves Out of Court.

This case is ripe for preemption because Plaintiffs' GIPA claims are based on questions

regarding family history of hearing loss that were asked during a "physical occupational health examination and assessment" conducted in accordance with the HCA. (*See* FAC ¶ 20; ECF 16-2). This case squarely aligns with *Branson v. Caterpillar, Inc.*, No. 23-CV-1429, 2024 WL 3823157, at *5 (N.D. Ill. Aug. 14, 2024), in which the court dismissed a GIPA claim as preempted by ERISA because the plaintiff alleged that the wellness program soliciting family medical history was part of an ERISA plan.

Plaintiffs cite *Harris-Morrison v. Sabert Corporation*, No. 23-CV-16120, 2024 WL 5264702, at *5 (N.D. Ill. Dec. 31, 2024) (at 8), to argue preemption "raises myriad factual issues" regarding whether the examinations were required by the HCA. Plaintiffs' reliance is misplaced. In *Harris-Morrison*, it was unclear from the pleadings whether an ERISA plan was involved, and so the court denied the motion to dismiss without prejudice to an early summary judgment motion, while limiting discovery to preemption issues. *Harris-Morrison*, 2024 WL 5264702, at *5. Like *Branson* and distinct from *Harris-Morrison*, Plaintiffs have pleaded themselves out of court by basing their GIPA claim on "a physical occupational health examination and assessment" that indisputably falls within the HCA. (FAC ¶ 20; ECF 16-2.)

**V.      The Putative Nationwide Class Lacks Standing and Shows How GIPA Obstructs the Uniform Federal Standards that Congress Intended.**

Plaintiffs do not dispute that GIPA does not apply extraterritorially. Nor do they dispute that the audiometric testing giving rise to alleged GIPA violations sustained by nonresidents would have occurred out of state. Instead, Plaintiffs urge this Court to find that, irrespective of where an alleged GIPA violation occurs, nonresidents may sue if their employer is headquartered in Illinois.

The Court should refuse to do so and dismiss the putative nationwide class for three reasons. **First**, Plaintiffs' case *McKnight v. United Airlines, Inc.*, Case No. 23-cv-16118, 2024 WL 3426807 (N.D. Ill. July 16, 2024), is inapposite. In *McKnight*, the plaintiff alleged "solicitation of

9

[her] protected genetic information occurred *from [defendant's] headquarters in Chicago, by [defendant's] recruiters located in Chicago.*" *Id.* at *6 (emphasis added). Unlike *McKnight*, Plaintiffs do not (and cannot) contend that nonresident "occupational health examinations" were administered from Illinois. Indeed, their own audiograms show such examinations occur at the employees' worksite. (*See* FAC ¶¶ 26-28; ECF 16-2 ("TEST SITE: Jacksonville").)

**Second**, this Court should diverge from *Foster v. Service Sanitation*, which allowed similarly conclusory allegations to support standing. No. 25 C 2101, 2025 WL 2347857, at *4 (N.D. Ill. Aug. 15, 2025). The FAC is devoid of any **factual content** that even suggests "circumstances relating to the alleged [GIPA violations] occurred mostly in Illinois," as is required for nonresident standing. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E. 2d 801, 852-53 (2005)). Instead, Plaintiffs assert conclusory allegations that Reynolds acted from its Illinois headquarters when it "devised[,] implemented … over[saw], controlled, and directed that its human resource staff at its locations nationwide." (FAC ¶¶ 22.) With zero factual allegations, the nationwide class claim is not "plausible on its face" and should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Third**, the nationwide class allegations further illustrate obstacle preemption. If GIPA is not preempted, companies headquartered in Illinois with OSHA-mandated hearing conservation programs at out-of-state facilities risk GIPA violations unless they implement standards that differ from companies not headquartered in Illinois. To prevent disparate standards from obstructing Congress's intended "system of uniform federal occupational health and safety standards," this Court should find preemption and dismiss the FAC with prejudice. *Gade*, 505 U.S. at 102.

## CONCLUSION

For these reasons, the Court should dismiss the FAC with prejudice.

Dated: October 6, 2025　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　FAEGRE DRINKER BIDDLE & REATH LLP

　　　　　　　　　　　　　　　　　　*/s/ Justin O. Kay*

　　　　　　　　　　　　　　　　　　Justin O. Kay (ARDC No. 6286557)
　　　　　　　　　　　　　　　　　　Charles E. Westerhaus (ARDC No. 6347022)
　　　　　　　　　　　　　　　　　　320 S. Canal Street, Suite 3300
　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　Tel:　(312) 569-1000
　　　　　　　　　　　　　　　　　　Fax:　(312) 569-3000
　　　　　　　　　　　　　　　　　　justin.kay@faegredrinker.com
　　　　　　　　　　　　　　　　　　charles.westerhaus@faegredrinker.com

　　　　　　　　　　　　　　　　　　Rachel A. Beck (*pro hac vice forthcoming*)
　　　　　　　　　　　　　　　　　　1500 K Street, NW, Suite 1100
　　　　　　　　　　　　　　　　　　Washington, D.C. 20005
　　　　　　　　　　　　　　　　　　Tel: (202) 842-8800
　　　　　　　　　　　　　　　　　　Fax: (202) 842-8465
　　　　　　　　　　　　　　　　　　rachel.beck@faegredrinker.com

　　　　　　　　　　　　　　　　　　*Attorneys for Reynolds Consumer Products, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2025, I had the foregoing electronically filed with the Clerk of Court using the CM/ECF system which will provide electronic notification to all parties of record.

<i>/s/ Justin O. Kay</i>